Casey, Ch. J.,
delivered the opinion of the Court.
This is another branch of the claim arising out of the brick contract for the Washington aqueduct. Some time in 1854 the United States, through Captain M. C. Meigs, entered into a contract with Degges & Smith to furnish, at a stipulated price, all the brick needed for the *311 Washington aqueduct. Mechlin & Alexander became the sureties of the contractors. Degges & Smith failed to comply, and the govern-, ment gave notice to Mechlin & Alexander, the sureties, that they would be held liable for its performance. They thereupon took upon themselves to comply with the agreement: for that purpose, they purchased land and commenced preparing a brick-yard. In the mean time they entered into a contract with William II. De Groot, by which he was to fulfil the contract in their names, and pay them five per cent, on the moneys received for brick furnished. They gave him a power of attorney, and the business at the departments and with the government was transacted in the names of Mechlin & Alexander. The original contract stipulated that it should not be assigned. De Groot furnished a part of the brick needed for one season; but failing in many ways in the performance of his agreements, Mechlin & Alexander, in pursuance of power and authority reserved in their arrangements with De Groot, entered upon the premises and dispossessed him. They then made a similar agreement and gave a like power of attorney to Kellogg, the claimant. Kellogg tookpossession of the brick-yard, commenced making-brick, and continued to furnish the aqueduct with brick during one season. For some reason, it became desirable to get rid of this brick contract, and to close it up Congress, on the 3d of March, 1857, passed the following joint resolution:
“ That the Secretary of the Treasury shall settle and adjust with all the parties respectively interested therein, on principles of justice and equity, all damages, losses, and liabilities incurred or sustained by said parties respectively, on account of their contract for manufacturing brick for the Washington aqueduct; and he is hereby directed to pay the amount found due by such settlement and adjustment out of the appropriation made to pay liabilities for said aqueduct, by the ‘ Act making appropriations for certain civil expenses of the government for the year ending June 30, 1857,’ approved the 18 th of August, 1856 : Provided, That the said parties first surrender to the United States all the brick made, together with all the machinery and appliances and other personal property prepared for executing the said contract, and that the said contract be cancelled.”
Approved March 3, 1S57.
On the 8th day of April, 1857, by an instrument of writing, under the respective hands and seals of A. H. Mechlin, C.' Alexander, William H. De Groot, and Henry Kellogg, after reciting the contract of Degges & Smith, and their failure to perform, and the undertaking of *312 the sureties, Mechlin & Alexander, aud also the subsequent agreements of De Groot and Kellogg with Mechlin & Alexander, it sets forth in extenso the joint resolution above quoted. It then provides as follows :
Now, in consideration of the premises and to effect the settlement and adjustment above referred to, and in compliance with the resolution aforesaid, the undersigned do hereby surrender to the United States “ all the brick made, together with all the machinery and appliances and other personal property prepared for executing the said contractand the said contract is hereby cancelled and given up.
In testimony whereof, the said Alexander H. Mechlin, Columbus Alexander, William H. De Groot, and Henry Kellogg, have hereunto set their hands and affixed their seals, this 8th day of April, 1857.
A. H. MECHLIN. [seal.]
C. ALEXANDER. [seal.]
WM. H. DE GROOT. [seal.] HENRY KELLOGG, [seal.]
They also joined in the following letter or notice to Captain M. C. Meigs, the engineer in charge of said aqueduct, on behalf of the United States :
“ Washington City, April 8, 1857.
“ Captain Montgomery C. Meigs :
“ Sir : The undersigned, parties interested in the contract for manufacturing brick for the Washington aqueduct, respectfully inform you that, pursuant to the resolution of Congress of March 3, 1857, they have, by deed of this date, herewith enclosed, surrendered to the United States all the brick made, together with all the machinery and appliances, and other personal property, prepared for executing the said contract, and cancelled the said contract. And they are ready and willing, and hereby offer, jointly and severally, to do any act or thing that may he necessary and proper for the surrender of said property and cancelment of said contract, pursuant to the resolution aforesaid.
“ If, in your judgment, anything further be required for the purpose aforesaid, they request that you will give them notice thereof, in order that it may he done.”
The same parties joined in a written statement and submission of their case to Hon. H. Cobb, Secretary of the Treasury, under the joint resolution aforesaid. After reciting the joint resolution and the various contracts and powers of attorney and the proceedings under them, they conclude as follows :
*313 “ The said William H. De G-root alleges that he had not failed or neglected to perform his contract with Lhe said Mechlin & Alexander, and that the acts of said Mechlin & Alexander to annul said contract, and take possession of the property, on the 9th of May, 1855, were unauthorized and without any legal authority. But inasmuch as the said Henry Kellogg entered into the said contract, made large expenditures under it, and carried on the work diligently and faithfully, in order to avoid litigation and disputes, an amicable arrangement has been made between the parties interested in said contract for the settlement and adjustment of their respective rights in the said contract, on just and equitable principles, as between themselves and the United States.
“ The undersigned, therefore, jointly and severally, respectfully solicit that in pursuance of the resolution of Congress aforesaid, a speedy settlement and adjustment may be made with the parties interested in said contract, upon just and equitable principles, by the Secretary of the Treasury, of the damages, losses, and liabilities incurred or sustained by the parties, respectively, on account of said contract, and that the amount found due upon such settlement and adjustment may be paid, pursuant to the resolution aforesaid.”
The parties appeared before Mr. Cobb, who, having- heard them and considered the case, on the 11th of January, 1858, made an award, finding due to the parties the sum of twenty-nine thousand five hundred and thirty-four dollars and nineteen cents, ($29,534 19.) This amount he awarded to be paid to Alexander & Mechlin, to be distributed among the parties according to their respective interests, upon the following grounds stated in the award:
“ The only remaining- question for my decision is, to whom shall the amount allowed he paid 1 The joint resolution is not as explicit on this point as it might have been; but I do not think that there can be any serious difficulty about it. Degges & Smith by their contract bound themselves not to sub-let or assign the same, or any portion of it. When they failed to comply with their contract, Mechlin & Alexander, their sureties, were required to carry it out, and were subrogated to all their rights as -well as their liabilities under the contract. Captain Meigs, the ag-ent of the government, recognized Mechlin & Alexander as the only contractors known to the government; and as the contract under which the claim has arisen especially provided against suh-contracting, I am of opinion that Mechlin & Alexander are entitled to draw the money; and all rights and equities, as between tliem and the. other parties, must be referred to tbe courts of the country.
*314 “As by this decision Messrs. Mechlin & Alexander will receive all that is due from the government, both under the original contract and the joint resolution of March 3, 1857, they must, on receiving the money, give a receipt to that effect.
“HOWELL COBB,
“ Secretary of the Treasury.
“January 11,1858.”
The award was filed, the money paid by the United States to Mechlin & Alexander, without objection or remonstrance from the claimant. An amicable distribution of the amount of the award was made between Mechlin & Alexander, De Groot, and Kellogg, the latter receiving for his share the sum of ten thousand four hundred and seventy-six dollars and ninety-six cents, (#10,476 96.)
The claimant brings this suit against the United States to recover a large sum which he alleges is due him for “ damages, losses, and liabilities incurred or sustained by him” on account of the contract for manufacturing brick for the Washington aqueduct, and for brick made, and machinery and appliances, and other personal property- prepared for executing said contract which he surrendered to the United States in the deed above recited.
The United States, by their solicitors, interpose the joint resolution, the deed of surrender, the submission to Cobb, the Secretary of the Treasury, under the resolution, his award, and the receipt by claimant of a portion of the sum awarded, as a defence to the action.
The claimant’s counsel contend that the award was not according to the submission, and therefore not binding upon their client; that the interest of the parties was several and distinct, and that the resolution under which the authority of the Secretary was derived required him to “ settle and adjust with all the parties respectively interested” in the contract, “ on principles of justice and equity, all damages, losses,' and liabilities incurred or sustained by said parties respectively.”
The case is very much like that of Kendall v. The United States, (12 Peters, 524.) There the Supreme Court of the United States held that an award made by an officer of the government under a joint resolution very much like the present was conclusive against the United States. The court says : “ Under this law the Postmaster General is vested with no discretion or control over the decisions of the solicitor; nor is any appeal or review of that decision provided for by the act.” And Mr. Justice Thompson even expresses a doubt “ whether the re *315 lators bad not acquired such a vested right as to be beyond the power of Congress to deprive them of it.”
In our case, the authority of Cobb, under the joint resolution, as a sole judge or arbitrator, was perfect and plenary. The submission of the other parties in the written agreements recited was as full and complete as had Congress made that of the United States in the resolution. So there was no lack of. authority to hear the case, or jurisdiction to make a binding and conclusive award. This much, we believe, is conceded on both sides. Was such an award made! Was it according to the submission ? '
There was an award made, as we have set forth in the statement of this case; and whether it was strictly'aecording to the submission we think is immaterial. For when an award is made which is not according to the submission, or where the arbitrator exceeds his authority, two courses are open to the parties: one is to acquiesce in the award and accept the conclusions it attains, submit to what it imposes, and take what it confers. The other course is to disaffirm the action of the referee, and repudiate the award in all its parts'. If the parties adopt the course first indicated, it amounts to a ratification of the referee’s action, and binds the parties the same as if the submission had been strictly pursued. A party cannot affirm in part and disaffirm in part. The award is an entire thing, and cannot be separated and divided. Here the claimant came in and accepted a benefit under this award, a part of the very sum awarded by the referee; and having done so, he is estopped from denying its validity or conclusiveness. It is in vain to say that it was obtained from Mechlin & Alexander, and not through the award. The report of the referee gave this fund to Mechlin & Alexander, the individuals standing in the proper legal relation of parties to the United States, as trustees for themselves and whoever else might be entitled to share in it. The award left them either to agree to a division amicably among tliemsdlvcs, or to carry it to the ordinary tribunals, which were fully competent to decide their respective rights. They agreed to a division of the amount of the award, and, having accepted a benefit under it, their lips are forever sealed against any impeachment of it.
We do not decide that the award was not according to the submission — it is not necessary to go so far; for even if it were not, it was fully ratified and confirmed by the action of the claimant. A subsequent ratification is as effectual as a prior authority.
In the case of De Groot, this award was not held binding, because, as to him, it had been expressly opened or set aside by the subsequent *316 joint resolution of the 15th June, 1860. We held the award made by Floyd, the referee in that case, void, because he exceeded and abused his authority; and because Congress, instead of doing anything to approve or ratify it, repudiated it, by repealing the resolution under which it was made, by a joint resolution of February 21, 1861.
Mr. McPherson, for the claimant.
Mr. Weed, the Assistant Solicitor, for the government.
If the claimant intended to insist upon the invalidity of Cobb’s re-report, he should have refused to receive any of its fruits. He could not participate in these and yet be permitted to deny its vitality and force. Having claimed and received its benefits, he must bear its obligations. We therefore sustain the demurrer and dismiss the petition.